

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 7272 | DATE | 7/11/2002 |
| CASE TITLE | Gingiss International, Inc., et al. vs. L & H Tuxes, Inc., et al. | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Petitioner's petition to compel arbitration and stay the California proceedings is granted. The parties shall arbitrate their dispute in Illinois. This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 15 2002 date docketed | 13 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 JUL 15 PM 3:15 | 7/11/2002 date mailed notice | |
| MD | courtroom deputy's initials | FILED | MD mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

| | |
|---|---|
| GINGISS INTERNATIONAL, INC., GINGISS FORMALWEAR, INC., GII ACQUISITION, INC., and MICHAEL J. CORRAO, <br><br> Petitioners, <br><br> vs. <br><br> L&H TUXES, INC., WILLIAM R. LUDWIG, and PAMELA C. LUDWIG, <br><br> Respondents. | Case No. 01 C 7272 <br> Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

Before the court is a petition to compel arbitration in Chicago, Illinois and stay the proceedings of the pending California state court action, *Ludwig* v. *Gingiss International, Inc.*, No. 843234-2. For reasons set forth herein, the court grants the requested relief.

### Background

Gingiss International, Inc. ("Gingiss International") is a Delaware corporation with its principal place of business in Addison, Illinois, which grants franchises to operate Gingiss Formalwear Centers throughout the United States. Gingiss Formalwear, Inc., also a Delaware corporation with its principal place of business in Addison, Illinois, owns and operates Gingiss Stores. GII Acquisition, Inc. is an Illinois corporation with its principal place of business in Illinois and owns 100% of the stock of Gingiss International and Gingiss Formalwear, Inc. Petitioner Michael J. Corrao is a citizen and resident of Illinois and is the President and a director of both Gingiss International and Gingiss Formalwear, Inc. Respondent L&H Tuxes,

13

Inc. ("L&H"), a California corporation with its principal place of business in California, has been a franchisee of Gingiss International since 1977. Respondents William R. Ludwig and Pamela C. Ludwig are citizens and residents of California and are the principal owners of L&H.

On March 5, 1998, Gingiss International entered into a six-page written agreement with L&H in which L&H agreed, for "$10.00 and other good and valuable consideration," to open and acquire Gingiss Formalwear Stores in the California Bay Area in certain targeted markets according to the time schedule set forth in the agreement (hereafter "Development Agreement"). (Mem. in Supp. of Pet., Ex. B, at 1, ¶ 1.) The Development Agreement cited L&H's "extensive experience and knowledge of the Gingiss Formalwear business, the Gingiss franchise and sophisticated knowledge of marketing, store operations, construction and retailing environments in the BAY AREA." (*Id.* at 1, Preamble.) The agreement was to expire on December 31, 2003. (*See id.* at 4, ¶ 4.)

Paragraph 8, at the top of page six of the Development Agreement, is entitled "GENERAL" and provides (in the same type-face as the rest of the document's provisions) that "The provisions of Section 16 and Section 17 of the Standard Franchise Agreement are incorporated herein by this reference as if set forth at length herein." (*Id.* at 6, ¶ 8.) The phrase "Standard Franchise Agreement" is defined on the first page of the Development Agreement as "Gingiss 2000 Program Standard Franchise Agreement for EXISTING STORE Number 209 at San Bruno California." (*Id.* at 1, Preamble.) Section 16 of the Standard Franchise Agreement (hereafter "SFA") is entitled "ENFORCEMENT." Subpart B, thereunder, is entitled "ARBITRATION" (hereafter the "arbitration provision"). (*Id.*, Ex. C, at 29, § 16B.) The arbitration provision, in bold, capital letters, provides in part:

2

> ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE COMPANY ... AND FRANCHISEE ... ARISING OUT OF OR RELATING TO: (1) THIS AGREEMENT OR ANY PROVISION THEREOF OR ANY RELATED AGREEMENT; (2) THE RELATIONSHIP OF THE PARTIES HERETO; (3) THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENT, OR ANY PROVISION THEREOF: ... SHALL BE SUBMITTED FOR ARBITRATION TO BE ADMINISTERED BY THE CHICAGO, ILLINOIS OFFICE OF THE AMERICAN ARBITRATION ASSOCIATION ON DEMAND OF EITHER PARTY. SUCH ARBITRATION PROCEEDINGS SHALL BE CONDUCTED IN CHICAGO, ILLINOIS ....

(*Id.*)

Prior to entering into the Development Agreement, L&H received a Gingiss Uniform Franchise Offering Circular, which contained a model Gingiss 2000 Program Franchise Agreement and a model Area Development Agreement with language identical to that in Section 16B of the SFA. (Resp., Ex. A, Ludwig Aff. ¶ 6.) Appended to the front of the circular was a document entitled "Additional Disclosures Required by the State of California In the Franchise Offering Circular of Gingiss International Inc." (hereafter "California Disclosures addendum").[1] That document states in part:

> 1. The following paragraphs are added at the end of Item 17 of the Offering Circular:
>
>> California Law Regarding Termination and Nonrenewal. California Business and Professions Code Sections 20000 through 20043 provide rights to franchisees and developers concerning termination or nonrenewal of the franchise. If the Gingiss 2000 Agreement or Area Development Agreement contain any provisions that are inconsistent with the law, the law will control.
>
> * * *

---

[1] Petitioners dispute that they provided petitioners with the circular and California Disclosures addendum prior to execution of the Development Agreement and aver that it was provided in connection with a franchise agreement subsequently executed. Petitioners, however, accept respondents' contention as true for purposes of this motion. (Reply, 8 n.5.)

3

> <u>Arbitration</u> The Gingiss 2000 Agreement and the Area Development
> Agreement require binding arbitration. Arbitration proceedings will
> be conducted in Chicago, Illinois. The arbitrator will have the right
> to award or include in his award any relief which he considers proper
> in the circumstances, including money damages (with interest on
> unpaid amounts from date due), specific performance, injunctive
> relief, attorney's fees and costs. *This provision may not be
> enforceable under California law.*

* * *

> 2. This Addendum shall be of no force and effect unless jurisdictional requirements
> of the California Franchise Investment Law, Cal. Corp. Code Sections 31000-31516
> and the California Franchise Relations Act, Cal. Bus. & Prof. Code Sections 2000-
> 20043 are met independently without reference to this Addendum.

(Resp., Ex. E.) (Emphasis added.) Respondents received similar disclosures in the past from Gingiss International in connection with respondents' acquisition of franchised Gingiss Formalwear stores. (Resp., Ex. A, Ludwig Aff. ¶ 6.) In all the years that the respondents have been franchisees (since the late 1970s) no one from Gingiss International ever told respondents that Gingiss International would seek to enforce any agreement that would require them to arbitrate in Illinois. (*Id.* ¶ 7.)

On or about July 11, 2001, respondents filed an action in state court in California, *Ludwig v. Gingiss International, Inc.*, No. 843234-2, for various claims including misrepresentation and breach of the Development Agreement, essentially alleging that petitioners violated respondents' exclusive rights to open and acquire Gingiss Stores in the Bay Area. Petitioners responded by filing the instant petition, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, to compel arbitration in Chicago,[2] arguing the claims in the state action arise out of and/or relate to the

---

[2] The petition could only have been brought in this district. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) ("[W]here the arbitration agreement contains a forum selection clause,
(continued...)

4

Development Agreement and, therefore, fall squarely within the arbitration provision. Respondents, however, claim that they are free to sue in California since there was no valid agreement to arbitrate. Specifically, they contend that the arbitration provision was not clearly incorporated into the Development Agreement or, if it was, there was no meeting of the minds that arbitration would be in Illinois due to language in the California Disclosures addendum. They argue that because arbitration should be in California, if at all, this court has no jurisdiction to compel arbitration in Chicago.

## Discussion

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, enables a party to invoke the authority of a court to enforce an arbitration agreement by compelling the reluctant party to arbitrate a dispute. Section 4 provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court that, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4. The court has jurisdiction of this matter since it would otherwise have jurisdiction under 28 U.S.C. § 1332 (the parties are diverse and the amount in controversy exceeds $75,000). *See id.*

The FAA provides that an arbitration clause in a "contract evidencing a transaction

---

²(...continued)
only the district court *in that forum* can issue a § 4 order compelling arbitration.") (emphasis in the original).

5

involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The court will enforce an arbitration agreement if (1) a valid agreement to arbitrate exists and (2) that agreement covers the underlying dispute. *See We Care Hair Dev., Inc.* v. *Engen*, 180 F.3d 838, 844 (7th Cir. 1999); *Kiefer Specialty Flooring, Inc.* v. *Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). Respondents dispute only the former element and contend they are entitled to a jury trial on this issue. A party is entitled a jury trial if the making of the arbitration agreement is in issue and he has demanded a trial by jury. 9 U.S.C. § 4. However, the court will only refer the issue to the jury "in the manner provided by the Federal Rules of Civil Procedure." *Id.*; *see also Doctor's Assocs., Inc.* v. *Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997) ("As when opposing a motion for summary judgment under Fed. R. Civ. P. 56, the party requesting a jury trial must 'submit evidentiary facts showing that there is a dispute of fact to be tried.'").

In determining whether a valid arbitration agreement arose between the parties, a federal court should look to the state law that ordinarily governs contract formation. *Gibson* v. *Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997). A district court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Illinois applies the "most significant relationship" test of the Restatement (Second) of Conflicts of Law. *Palmer* v. *Beverly Enterprises*, 823 F.2d 1105, 1109-10 (7th Cir. 1987). This approach requires consideration of the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the domicile of the parties. *Id.* The parties do not dispute that the Development Agreement was negotiated and executed in California and that the place of

performance took place in California. Therefore, California law governs contract formation and interpretation.

Incorporation of the Arbitration Provision Into the Development Agreement

California law permits incorporation, by reference, of an arbitration agreement in another document. *See Boys Club of San Fernando Valley Inc.* v. *Fidelity and Deposit Co. of Maryland*, 6 Cal. App. 4th 1266, 1271, 8 Cal. Rptr. 2d 587, 589 (2d Dist. 1992); 14 Cal. Jur. 3d *Contracts* § 192 ("[A] written agreement may incorporate other written agreements . . . so as to make them part of the contract itself."). However, the reference must be clear and unequivocal, called to the attention of and consented to by both parties, and the terms of the referenced document must be known or easily available to the parties. *Shaw* v. *Regents of the Univ. of California*, 58 Cal. App. 4th 44, 54, 67 Cal. Rptr. 2d 850, 856 (3d Dist. 1997).

Respondents argue that reference to Sections 16 and 17 of the SFA were not called to their attention nor consented to because the reference was hidden in paragraph 8 – a "boilerplate" provision – on page six of the Development Agreement under the heading "GENERAL" instead of "Arbitration." (Resp. at 7.) Further, they argue that the fact that incorporation of Sections 16 and 17 would result in a number of ambiguities (*i.e.*, sections 16A, 16J, and 17 refer to the phrase "the STORE," a term that is not defined in either the body of the Development Agreement or Sections 16 and 17 themselves and which makes no sense in the context of the Development Agreement) is evidence Gingiss International intended to "disguise" the arbitration provision, when it could have just cut and pasted that provision into the Development Agreement. (*Id.* 8.) Finally, they argue the court should not infer a waiver of a basic right, such as judicial forum, based on such "buried, innocuous reference to Section 16[.]" (*Id.*)

7

Respondents' arguments are unpersuasive. The reference to Section 16 of the SFA was not hidden. It appears in the same type-face as the other provisions of the Development Agreement and is located at the top of the page containing the signature lines. Moreover, respondents do not dispute that the phrase "Standard Franchise Agreement" is defined in the Development Agreement and that the SFA was readily available to them (it appears to have been one of their own franchise agreements). In the SFA, the arbitration language is clearly and boldly spelled out in subsection 16B. While respondents raise a point that some of the subsections of 16 and 17 of the SFA do not seem to "fit" the Development Agreement, these subsections are not at issue here. Only the arbitration language is at issue, which respondents have not argued is ambiguous. Finally, the Development Agreement need not make explicit reference to an "arbitration" provision in order for that provision to be properly incorporated. *See Boys Club of San Fernando Valley Inc.*, 6 Cal. App. 4th at 1271, 8 Cal. Rptr. 2d at 589 ("An agreement need not expressly provide for arbitration, but may do so in a secondary document which is incorporated by reference.") (citation omitted); *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 750, 30 Cal. Rptr. 2d 618, 622 (2d Dist. 1994) (Subcontract's reference to the "terms and conditions of the Contract Documents" validly incorporated Construction Contract and the arbitration provisions included in the Construction Contract).[3] Therefore, the court concludes that the arbitration provision was properly incorporated into the Development Agreement. *See Madden v. Kaiser Found. Hosp.*, 552 P.2d 1178, 31 Cal. Rptr. 882, 889 (Cal. 1976) ("[O]ne who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the

---

[3] *Chan v. Drexel Burnham Lambert Inc.*, 178 Cal. App. 3d 632, 643, 223 Cal. Rptr. 838, 844 (2d Dist. 1986), relied upon by respondents is inapposite in that unlike the instant case the reference in *Chan* did not point to a specific contract provision of another document.

language of the instrument.").

Meeting of the Minds on Venue for Arbitration

Alternatively, respondents argue that even if the arbitration provision was properly incorporated into the Development Agreement, there was no meeting of the minds with respect to where arbitration would take place. According to respondents, they believed, based on language in the California Disclosures addendum (*i.e.* that the arbitration provision "may not be enforceable under California law") and the fact that Gingiss International never told them that they would insist on arbitration in Chicago with respect to the Development Agreement or any of the franchise agreements they had signed in the past, that arbitration proceedings would take place in California. (*See* Resp., Ex. A, Ludwig Aff. ¶¶ 6-7.) Respondents claim that had they known that Gingiss International would insist on arbitration in Chicago they would not have entered into the Development Agreement. (*Id.* ¶ 8.)

Respondents rely solely on *Laxmi Inv., LLC* v. *Golf USA*, 193 F.3d 1095 (9th Cir. 1999). In *Laxmi*, the plaintiff, Laxmi Corporation, operated a golf retail franchise for defendant franchisor, Golf USA, Inc. Prior to entering into the franchise agreement with Golf USA, Laxmi received from Golf USA a Franchise Operating Circular as required by California law. The circular contained language nearly identical to that in the instant case. *Id.* at 1096. The franchise agreement, however, made no mention of California law but stated that disputes would be "resolved by arbitration conducted in Oklahoma[.]" *Id.* When Laxmi's franchise business failed, it filed for arbitration in California based on a California code provision, which states that a "provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise

9

business operating within this state." California Franchise Relations Act ("CFRA"), Cal. Bus. & Prof. Code § 20040.5.

Golf USA responded that the Federal Arbitration Act preempted the CFRA. However, the Ninth Circuit concluded that even if the FAA preempts California state law (an issue it did not decide), the forum-selection provision in the franchise agreement calling for arbitration in Oklahoma was unenforceable due to lack of mutuality (or a meeting of the minds),[4] because the franchisee had "no reasonable expectation that it had agreed to a forum other than California." *Id.* at 1097. Specifically, the court reasoned that because the offering circular contained a provision that stated "[i]f the Franchise agreement contains a provision that is inconsistent with [California] law, the law *will* control" and the Oklahoma forum provision in the franchise agreement "undeniably" ran afoul of California law (section 20040.5 of the California Franchise Relations Act), the parties intended to have California law control, and there was no evidence that Golf USA, the franchisor, did not intend otherwise (i.e. by informing Laxmi it planned to enforce the Oklahoma provision under a preemption theory). *Id.* (emphasis added).

*Laxmi* is inapposite. The California Disclosures addendum at issue in the instant case states at paragraph 2 that it shall "be of no force and effect unless jurisdictional requirements of the California Franchise Investment Law ["CFIL"], Cal. Corp. Code Sections 31000-31516 and the California Franchise Relations Act ["CFRA"], Cal. Bus. & Prof. Code Sections 20000-20043 are met independently without reference to this Addendum." (Resp., Ex. E, ¶ 2.) The

---

[4]The proposition underlying *Laxmi's* conclusion that preemption was not an issue is that a forum-selection provision in an arbitration agreement (like any other provision) can be invalidated "upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. These include the contract defenses of "fraud, duress, mistake, bias, lack of mutuality, or adhesion." *See AlphaGraphics Franchising, Inc. v. Whaler Graphics, Inc.*, 840 F. Supp. 708 (relied upon by *Laxmi*).

10

jurisdictional provision of the CFRA provides that it applies "to any *franchise* where either the franchisee is domiciled in this state or the franchised business is or has been operated in this state." CFRA § 20015 (emphasis added). As pointed out by petitioners, CFIL and CFRA define "franchise," as a contract or agreement by which (a) a franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; (b) the operation of the franchisee's business pursuant to that plan or system is substantially associated with the franchisor's trademark and (c) the franchisee is required to pay, directly or indirectly a franchise fee. *See* CFRA § 20001; CFIL § 31005(a). Payment of an annual franchise fee of $100 or less under the CFRA or $500 or less under the CFIL is not considered a franchise fee. CFRA § 20007(d); Cal. Code Regs. Tit. 10, ch. 3, § 310.011.

The Development Agreement, which the parties concede is geared toward expanding Gingiss International presence in a particular market and not focused on the establishment of one particular franchise, does not correspond with the "franchise" definition, particularly given that the Development Agreement, which was entered into for consideration of $10.00, does not mention a franchise fee. Thus, the California Disclosures addendum does not apply to the Development Agreement. As such, the other language in the California Disclosures addendum providing that California law will control if there is an inconsistency between the Development Agreement and California law (Resp., Ex. E, ¶ 1) does not apply such that Gingiss International could be said to have represented to respondents that in the event of any conflict it would abide by California law. Moreover, if the definition of "franchise" is not met with respect to the Development Agreement, it would also appear that CFRA § 20040.5 does not set up a direct

11

conflict with the Development Agreement's venue provision. Because these were the two factors determinative in *Laxmi* and they are absent in the instant case, any failure on petitioners' part to communicate an intent to enforce the arbitration provision is, therefore, irrelevant[5] (unless perhaps respondents had evidence that petitioners *expressly* told them that Gingiss International *would not* seek to enforce the arbitration provision in the Development Agreement, which they do not claim).

The court concludes that in light of the clearly incorporated arbitration provision and inapplicable disclosure language (assuming it was even sent) there was a meeting of the minds concerning the venue of arbitration in the Development Agreement[6] and the arbitration provision is, therefore, enforceable. *See Merced County Sheriff's Employees' Ass'n v. County of Merced*, 188 Cal. App. 3d 662, 672, 233 Cal. Rptr. 519, 525-26 (5th Dist. 1987) (A court must determine mutual assent from an objective "reasonable meaning of words or acts of the parties" and not a subjective standard.).[7] Therefore, the court grants the petition to compel arbitration in Chicago,

---

[5]In any event, the court would not have considered the offering circular sent out by petitioners prior to the execution of their most recent franchise agreement, dated December 8, 2000, which contains additional language about petitioners' intent to enforce arbitration provisions (*see* Reply, A4), since that circular was sent out after the execution of the Development Agreement.

[6]The court's ruling is limited to the Development Agreement. If a franchise agreement were at issue such that the jurisdictional requirements were met, the case would present different issues at least with respect to the applicability of *Laxmi*.

[7]Although not necessary to its decision, the court points out that *Laxmi* is problematic in light of the preemptive effect of the FAA. It is well settled that the FAA preempts conflicting state law. *Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984). Because the FAA was in existence at the time of the parties' contracting and became part of their agreement, *see Alpha Beta Food Markets, Inc. v. Retail Clerks Union Local 770*, 45 Cal.2d 764, 291 P.2d 433, 437 (Cal. 1955), it presumably would operate to nullify any effect of the California code provision voiding an out-of-state forum provision (and its attendant required disclosures regarding nonenforceability of such provisions), such that it would be unreasonable for a party to rely thereon when agreeing to the venue provision in the arbitration agreement. Although the Ninth Circuit rejected this argument in *Laxmi*, reasoning that it would lead to undercutting the "California public policy which requires honest disclosures to franchisees" and stated that a franchisor could challenge the validity of the required disclosures in an administrative proceeding or in court, *Laxmi*,

(continued...)

Illinois. Because respondents have not contested the motion to stay, in the event the court granted the motion to compel, the court also orders that the California state proceedings be stayed.

## CONCLUSION

Accordingly, the petition to compel arbitration and stay the California proceedings is granted. The parties shall arbitrate their dispute in Chicago, Illinois.

ENTER: _/s/ Joan H. Lefkow_
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: July 11, 2002

---

[7](...continued)
193 F.3d at 1098, this court believes that *Laxmi's* analysis not only passes over contract construction principles, but could undercut federal policy which clearly favors upholding arbitration agreements. *See Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").